IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVIE D. JONES, #568611 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  4:20cv589 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

*Pro Se* Petitioner Stevie D. Jones, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Christine A. Nowak for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Hopkins County conviction, Cause No. F17-1823-431. On May 18, 2018, a jury found Petitioner guilty of committing assault-family violence, enhanced to a third-degree felony by Petitioner's 1990 conviction for the family violence-related murder of Yolanda Graves. (Dkt. #10-25, pp. 5-7). The trial court sentenced Petitioner to four years and five months' confinement. (Dkt. #10-25, p. 5). Petitioner appealed his conviction, which was affirmed on April 11, 2019. *Jones v. State*, No. 02-18-00237-CR, 2019 WL 1574955 (Tex. App. Apr. 11, 2019) (Dkt. #10-3). In a single issue, Petitioner challenged the sufficiency of the evidence to support his conviction, arguing that "key elements" were unsupported by the evidence—namely, the prior conviction for a family violence-related offense based on a dating relationship between him and Graves. *Id.* at *1 (Dkt. #10-3, p. 2). Petitioner did not file a petition for discretionary

review ("PDR") with the Texas Court of Criminal Appeals ("TCCA"). (Dkt. #9-1). Petitioner filed an application for state habeas corpus relief in June of 2019. (Dkt. #10-25, pp. 9-19). On July 30, 2019, the state habeas court entered an Order adopting, as its own, the State's Proposed Findings of Fact and Conclusions of Law (Dkt. #10-25, pp. 105-08) and recommending that Petitioner's application be denied. (Dkt. #10-25, p. 109). On October 16, 2019, the TCCA denied the application without a written order. (Dkt. #10-26).

Petitioner filed the instant petition on July 17, 2020 (Dkt. #1).[1] Petitioner asserts the following claims for relief:

1. He is actually innocent.

2. He was deprived of effective assistance of trial counsel because his attorneys failed to:

    a. request a speedy trial;

    b. prepare an actual innocence defense;

    c. timely disclose a plea offer from the State; and

    d. properly object to the admission of his prior murder conviction into evidence.

3. The trial court erred by admitting Petitioner's prior murder conviction into evidence.

4. The prosecution committed a *Brady* violation by failing to disclose an indictment against one of the officer's in the case.

(Dkt. #1, pp. 6-7). The Director filed a response, arguing that Petitioner's claims are procedurally barred or without merit. (Dkt. #9). Petitioner filed a reply. (Dkt. #11).

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on July 17, 2020. (Dkt. #1, p. 10).

## II. FACTUAL BACKGROUND

The Second District Court of Appeals set out the facts as follows:

The record reflects that around mid-morning on September 27, 2016, Debra Black called 911 to report that 49-year-old Jones was holding his girlfriend, Black's 22-year-old granddaughter D.P., against her will. In her written statement to the police, D.P. stated that Jones had assaulted her with a belt, a cane, a shoe, and his fist, but at trial, almost two years later, she called her written statement "scribble scrabble" that she did not recall writing. Video footage from the arresting officer's body camera was admitted into evidence and published to the jury. On the video, D.P. speaks so softly that the recording does not pick up her statements, but the officer repeats D.P.'s statements without contradiction as follows: Jones punched her in the mouth and choked her until she lost consciousness; when she regained consciousness, he kicked her, punched her, and hit her with a belt, and he also tied one of her hands to a couch. When the officer spoke with Jones, he told her that nothing physical had happened between them. Jones's relative and two of his friends who had been staying at the house denied having heard anything. Photographs of D.P.'s mouth show that she suffered some sort of injury. . . .

*Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *1 n.3 (Dkt. #10-3, p. 3 n.3).

Pursuant to the indictment, the State had to prove beyond a reasonable doubt that, on or about September 27, 2016, Petitioner had intentionally, knowingly, or recklessly caused bodily injury to D.P., a member of his family or household or someone with whom he had a dating relationship, by grabbing, pushing, or striking her with his hand or choking her with his arm and that Petitioner had previously been convicted on August 24, 1990, in the 265th District Court of Dallas County, in cause number F88-81145-PR, of murdering someone with whom he had had a dating relationship. *See* Tex. Penal Code Ann. § 22.01(a), (b)(2)(A); *Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *1 n.2 (Dkt. #10-3, p. 2 n.2).

The trial court admitted into evidence Petitioner's penitentiary packet that contained his August 24, 1990, judgment of conviction for Graves's 1988 murder, which matched the above trial court and cause number information, and which also included Petitioner's photographs, demonstrating to the jury that he was the same man on trial for the instant offense. *Jones*, No. 02-

3

18-00237-CR, 2019 WL 1574955, at *2 (Dkt. #10-3, p. 4). Additionally, the following evidence was also introduced at trial: the Dallas Court of Appeals' opinion, which affirmed Petitioner's murder conviction, and which was read to the jury by a Denton County investigator[2];   the testimony by Demetris Bollin that when she was sixteen, Petitioner had dated Graves, her nineteen-year-old half-sister, and had been convicted of murdering her; the testimony of Kevin Navarro, who had retired from the Dallas Police Department in 2012 after thirty-one years of service, and who had investigated and arrested Petitioner for the murder of Graves and described Petitioner as having been Graves' ex-boyfriend; and Navarro's testimony that he did not speak with Petitioner's friends or family during his investigation and had determined Petitioner and Graves' relationship based on information from Graves' family members and friends. *Id.* (Dkt. #10-3, p. 5).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

---

[2] As set forth in the Second District Court of Appeals' opinion: "The Denton County investigator read to the jury the following: 'Yolanda Graves and Stevie Jones met and began dating in high school. After Jones started buying Graves expensive presents and taking her on trips, Graves' father, [E.]D. Johnson, asked her to move from his house." *Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *2 n.4 (Dkt. #10-3, p. 5, n.4).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*,

544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Furthermore, the TCCA's refusal of a PDR or silent denial of relief constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court recently explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV. ANALYSIS

### A.   Actual Innocence (Claim One)

In Claim One, Petitioner asserts that he is actually innocent because the victim recanted her complaint, the audio of the police video failed to capture the victim's statement to police, and the evidence generally "prov[ed] no family violence assault ever took place." (Dkt. #1, p. 6).

A stand-alone claim of actual innocence is not cognizable on federal habeas corpus review "absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998). Rather, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. Further, even assuming the existence of some new evidence and that a bare claim of actual innocence could state a cognizable ground for federal habeas relief, the Supreme Court has stated that, even if a "truly persuasive" showing of actual innocence would warrant federal habeas relief, the threshold for such a claim would be "extraordinarily high." *Id.* at 417. "Actual innocence means factual innocence and not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). In order to establish actual innocence, a petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 328 (1995)). To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, critical physical evidence—that was not presented at trial. *Schlup*, 513 U.S. at 324.

In this case, Petitioner has not provided the Court with any new or newly discovered evidence that was not presented at, or available at the time of, trial to support his claim. Nor does he identify any valid claim of constitutional error. Thus, Petitioner has failed to present a cognizable claim of actual innocence.

To the extent Petitioner's claim could be liberally interpreted as asserting that the evidence was insufficient to support his conviction because the evidence did not show that Petitioner had assaulted D.P., his claim is also without merit. Claims of "no evidence" or insufficient evidence to support a conviction are reviewed under the legal-sufficiency standard set out in *Jackson v. Virginia*. This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000); *Norris v. Davis*, 826 F.3d 821, 833 (5th Cir. 2016). This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy*, 201 F.3d at 589 (quoting *Jackson*, 443 U.S. at 324 n.16). As a result, a federal habeas court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claims of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991). Consideration of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices and conflicting inferences are to be resolved in favor of the jury's verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994). A federal habeas court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Marler*, 777 F.2d at 1012; *Alexander v. McCotter*, 775 F.3d 595, 598 (5th Cir. 1985). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

On direct appeal, the Second District Court of Appeals noted that, although Petitioner did not challenge the sufficiency of the evidence to support the offense's elements that he assaulted D.P., "the jury could have found those elements beyond a reasonable doubt based on the [the evidence introduced at trial] and its credibility determinations." *Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *1 n.3 (Dkt. #10-3, p. 3 n.3). The evidence reviewed and relied on by the Second District Court of Appeals in making this sufficiency of the evidence determination is specifically set forth above in Section II of this Report and Recommendation. In the instant petition, Petitioner does not challenge—as he did on direct appeal—the sufficiency of the evidence with respect to the element that his prior conviction was for a family violence-related offense based on a dating relationship between him and Graves. In any event, the Second District Court of Appeals held that "there was sufficient evidence upon which the jury could have found beyond a reasonable doubt that Jones had had a dating relationship with Graves before he murdered her." *Id.* at *3 (Dkt. #10-3, p. 6).

The Court finds that the Second District Court of Appeals thoroughly reviewed the evidence, properly applied the *Jackson* standard, and found that the evidence was sufficient to support Petitioner's conviction. Affording due respect to the role of the jury and the state courts, the Court finds that the evidence at Petitioner's trial was not nearly sparse enough to sustain a due process challenge under *Jackson*. The evidence was sufficient under Texas law to convict Petitioner of assault-family violence, enhanced to a third-degree felony by Petitioner's 1990 conviction for the family violence-related murder of Graves. Above all, Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson,* 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner has failed to show that the state court decision was objectively unreasonable. *See Johnson*, 566 U.S. at 651. Accordingly, to the extent Petitioner asserts an insufficiency of the evidence claim, it should also be denied.

**B.      <u>Ineffective Assistance of Counsel (Claim Two)</u>**

In Claim Two, Petitioner alleges four instances of ineffective assistance of trial counsel. (Dkt. #1, p. 6).

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one,

so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

### 1.    Failure to Request Speedy Trial (Claim Two (a))

In Claim Two (a), Petitioner asserts that trial counsel rendered ineffective assistance by failing to secure a speedy trial. (Dkt. #1, p. 6).

Petitioner raised this claim in his state habeas application. As the State pointed out in its answer to the application, the record refutes this contention and "demonstrates that Petitioner repeatedly demanded different attorneys and engaged in dilatory tactics." (Dkt. #10-25, p. 34). The record is consistent with the State's representation. On September 22, 2017, trial counsel filed a motion for speedy trial. (Dkt. #10-8, pp. 13-15). About one month later, Petitioner and trial counsel both requested that trial counsel withdraw from representation, which the trial court granted, and

new counsel was appointed. (Dkt. #10-8, pp. 30, 68). The trial court admonished Petitioner that trial setting would have to be reset based upon counsel's withdrawal and appointment of new counsel. (Dkt. #10-8, p. 177). Petitioner then filed a *pro se* motion to dismiss the indictment, and the State filed a motion to amend the indictment. (Dkt. #10-8, p. 177). At a pretrial hearing on November 3, 2017, the trial court denied Petitioner's motion to dismiss and granted the State's motion to amend the indictment. (Dkt. #10-8, p. 177). At the hearing, Petitioner appeared with new counsel and urged the motion for speedy trial and stated that he was ready for trial on November 13, 2017, "despite court's admonishments regarding advantages of additional time for investigation and preparation by new counsel." (Dkt. #10-8, p. 177). On November 13, 2017, trial counsel moved for a continuance, which the trial court granted. (Dkt. #10-8, pp. 85-86, 93). On January 22, 2018, trial counsel filed a motion to withdraw because Petitioner had retained new counsel. (Dkt. #10-8, pp. 94-96). On January 25, 2018, the trial court allowed Petitioner to substitute retained attorney for appointed counsel. (Dkt. #10-8, p. 97). On February 21, 2018, Petitioner's new, retained counsel requested a continuance, which was granted, and trial was set for April 30, 2018. (Dkt. #10-8, pp. 120-21, 124).

The record indicates that the trial delays were the result of Petitioner's multiple motions and changes of counsel, and any delays and continuances of the trial were for the benefit of Petitioner so that counsel could adequately prepare for trial. Petitioner fails to provide any record citations or evidence to support his claim that any of his attorneys acted deficiently in requesting continuances or that he was prejudiced by the trial delays. Indeed, Petitioner provides nothing but conclusory assertions about his attorneys' performances related to securing a speedy trial. *Sayre*, 238 F.3d at 635-36. Upon review of the record, the Court finds that Petitioner's attorneys' performances were not deficient or prejudicial under *Strickland* and that Petitioner therefore fails

to make the required showing that the state court's rejection of his ineffective assistance of counsel claim was an unreasonable application of *Strickland*. Accordingly, this ineffective assistance of counsel claim should be denied.

### 2.    <u>Failure to Prepare a Defense (Claim Two (b))</u>

In Claim Two (b), Petitioner argues that he suffered ineffective assistance of counsel when trial counsel failed to prepare an actual innocence defense despite exculpatory evidence, such as the victim's recanting affidavit. (Dkt. #1, p. 6). Petitioner raised this allegation in his state habeas application, and it was rejected by the state court.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown*, 419 F.3d at 375.

In her written statement to the police, the victim stated that Petitioner had assaulted her with a belt, a cane, a shoe, and his fist. *Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *1 n.3 (Dkt. #10-3, p. 3 n.3). Before trial, the victim completed an affidavit recanting her police statement and claiming that no physical altercation occurred between her and Petitioner. (Dkt. #10-25, p. 57). At trial, she called her written police statement "scribble scrabble" that she did not recall writing. (Dkt. #10-15, p. 44); *see also Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *1 n.3 (Dkt. #10-3, p. 3 n.3). At the close of evidence, Petitioner's counsel moved for a directed verdict, arguing that "the State has not proved or put enough evidence out there to rise to the level of having issues on the law or the facts in this case, specifically to-wit: *the complaining witness has, in fact,*

*recanted on all issues and said that the incident did not happen.*" (Dkt. #10-16, p. 17) (emphasis added).

In addition to the presumption that counsel's performance was adequate, Petitioner fails to offer any evidentiary support for his claim that trial counsel rendered ineffective assistance by failing to prepare a defense. Petitioner's claims are merely speculative because he fails to allege or demonstrate any additional avenues of investigation or methods of preparation which would have been favorable to his defense. Therefore, Petitioner fail to raise a cognizable ground for relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982), *cert. denied*, 461 U.S. 951 (1983).

Furthermore, the record shows that a vigorous defense was presented by Petitioner's trial counsel. Evidence of the victim's recantation was introduced at trial, and trial counsel relied on her recantation as part of the defense theory. The mere fact that it was unsuccessful does not overcome the strong presumption that the attorney provided constitutionally sufficient representation. *See United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989). Petitioner has not shown that the state court's denial of this claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner is not entitled to relief on his claim that counsel's trial preparation was deficient and prejudicial, and the claim should be denied.

### 3.    <u>Failure to Timely Disclose Plea Offer (Claim Two (c))</u>

In Claim Two (c), Petitioner contends that trial counsel rendered ineffective assistance by failing to timely disclose a plea offer from the State. (Dkt. #1, p. 6). Specifically, Petitioner states: "Each [of his attorneys] withheld State[']s 336 days offer depriving Pet[itioner], yet due to conflict of interest, intentionally refused to tell Pet[itioner] of the offer subjecting him to; [sic] [a]n enhancement . . . ." (Dkt. #1, p. 6).

16

A review of Petitioner's state court proceedings reveals that the Director is correct that Petitioner did not fairly and properly present this claim to the highest state court. Petitioner failed to raise this claim in his state habeas application. Therefore, the TCCA has not had an opportunity to review Petitioner's claim. Accordingly, Petitioner's Claim Two (c) is unexhausted.

If a petitioner has failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman*, 501 U.S. at 735, n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). If Petitioner presented Claim Two (c) at this time to the TCCA in another state writ application, the court would find it to be procedurally barred under the Texas abuse of the writ doctrine. Tex. Code Crim. Proc. Ann. art. 11.07 § 4; *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, upon return to federal court, this claim would be barred from federal habeas review under the federal procedural default doctrine. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (the Texas abuse of the writ doctrine is an "independent and adequate" state procedural bar for purposes of federal habeas review); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.") (quoting *Coleman v. Quaterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007))).

Alternatively, the Court finds that this claim is without merit. The Supreme Court has made clear that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). However, Petitioner has neither alleged beyond conclusory allegations, nor offered any evidence to demonstrate, that a formal plea offer was communicated to his counsel, of

which he was not timely informed. Besides alluding to a "336 days offer," Petitioner gives absolutely no details regarding the terms of the allegedly unpresented plea offer. For example, he does not describe when the State supposedly made this plea offer to counsel or when the offer expired. Petitioner's conclusory allegations fail to raise a cognizable ground for relief. *See Ross*, 694 F.2d at 1011-12.

### 4.    Failure to Object (Claim Two (d))

In Claim Two (d), Petitioner argues that trial counsel rendered ineffective assistance by failing to properly object to the admission of his prior murder conviction. (Dkt. #1, p. 6). Specifically, Petitioner alleges that trial counsel "refused to vig[orous]ly protect Pet[itioner], allowing State/Court to proceed denying Pet[itioner]'s motion to dismiss well knowing of the prejudicial effects of presenting an out dated prior conviction of murder without proving family viol[e]nce took place in the murder of a non-family member." (Dkt. #1, p. 6).

A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Indeed, it is clear in the Fifth Circuit that "counsel is not required to make futile motions or objections." *Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012) (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *see also Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

"Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Furthermore, a determination of ineffectiveness "depends on whether . . . an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987); *McLean v. Dir., TDCJ-CID*, No. 4:07CV298, 2010 WL 3702585, at *6 (E.D. Tex. Sept. 15, 2010).

The Court understands that Petitioner is asserting that his prior murder conviction was not a crime involving family violence and that trial counsel should have objected to its admission on that basis. If a defendant has been previously convicted of an offense under Penal Code section 22.01(a) against a person whose relationship to or association with the defendant is described by Family Code section 71.0021(b)—i.e., if the offense for which the defendant was previously convicted was an act of family violence against a person with whom the defendant has a dating relationship—the level of the offense is enhanced by section 22.01(b)(2)(A) from a Class A misdemeanor to a third-degree felony. *See* 22.01(b)(2)(A); Tex. Fam. Code Ann. § 71.0021(b) (defining "dating violence" to include an act intended to result in physical harm, bodily injury, or assault against a person with whom defendant has a "dating relationship," i.e., "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature"). The Second Court of Appeals concluded that "there was sufficient evidence upon which the jury could have found beyond a reasonable doubt that [Petitioner] had had a dating relationship with Graves before he murdered her." *Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *3 (Dkt. #10-3, p. 6). Therefore, Petitioner's murder conviction qualified as a family-violence related offense and was properly before the jury as an enhancing element of his offense. As such, trial counsel was not ineffective for failing to object to the admission of Petitioner's prior murder conviction on the basis that it did not constitute a family violence-related murder. Thus, Petitioner

has not shown that the state court's implicit denial of this claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner is not entitled to relief on this ineffective assistance claim.

**C.    Admission of Prior Conviction (Claim Three)**

In Claim Three, Petitioner contends that the trial court erred by admitting Petitioner's prior murder conviction into evidence. (Dkt. #1, p. 7).

Trial court errors must do more than affect the verdict to warrant relief in habeas cases—it must render the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). To determine whether an error by the trial court rendered the trial fundamentally unfair, it must be determined if there is a reasonable probability that the verdict would have been different had the trial been conducted properly. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). The United States Supreme Court has held that a federal harmless error standard applies on federal habeas review of state court convictions. *Brecht*, 507 U.S. at 637-38. The test is whether the error had "substantial and injurious effect" or influence in determining the jury's verdict. *Id.* 507 U.S. at 637. Habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. *Id.* In sum, habeas petitioners may not prevail in a federal habeas action simply by showing a violation of state law—they must show that the trial was fundamentally unfair, thus denying them due process by prejudicing the outcome of the trial. *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1987).

The Court finds that Petitioner has failed to show that the trial was fundamentally unfair. As explained by the Second Court of Appeals, Petitioner's prior murder conviction was necessary proof of an element of the instant offense:

> To support the enhanced conviction, the State was required to prove beyond a reasonable doubt that Jones had previously been convicted on August 24, 1990, in

the 265th District Court of Dallas County, in cause number F88-81145-PR, of murdering someone with whom he had had a dating relationship. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). The trial court admitted into evidence Jones's penitentiary packet that contained his August 24, 1990 judgment of conviction for Graves's 1988 murder, which matched the above trial court and cause number information and which also included Jones's photographs, demonstrating to the jury that he was the same man on trial for the instant offense, and satisfying the first portion of this element.

*Jones*, No. 02-18-00237-CR, 2019 WL 1574955, at *2 (Dkt. #10-3, p. 4). Petitioner provides no argument for why his prior murder conviction was inadmissible beyond noting that the trial court acknowledged that his prior conviction was "prejudicial." (Dkt. #1, p. 7) (citing Dkt. #10-11, pp. 32-33). But, as the trial court also noted, "that's a prejudice that the law allows, that the legislature has created by treating people differently if they've got prior felony convictions or they have a prior conviction for family violence." (Dkt. #10-11, p. 33). In sum, although evidence of a prior conviction is prejudicial, it does not mean that it is necessarily inadmissible.

Petitioner also states that his prior murder conviction "violated Ex Post Facto[] because due process is violated byway of legislature <u>specifically</u> mandates that [] any crime occur[r]ing prior to the enactment date of this subsection shall be considered under the <u>prior</u> law." (Dkt. #1, p. 7) (emphasis in original). The state habeas court concluded that no violation of the ex post facto clause occurred (Dkt. #10-25, p. 107, ¶ 5, p. 109), and the TCCA subsequently denied relief without a written order, which constitutes an adjudication on the merits, *see Singleton*, 178 F.3d at 384.

The Court understands that Petitioner is contending that his conviction of felony assault on a family member violated the ex post facto prohibitions of the United States Constitution and the Texas Constitution because it was based upon language in Texas Penal Code section 22.01(b) that was not in effect at the time of his prior murder conviction in 1990, which was used to enhance his offense to a felony. The part of Texas Penal Code section 22.01(b) relied upon in the indictment

21

to allege a felony offense in this case took effect on September 1, 2005, and applies to offenses committed on or after that date. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 788, 2005 Tex. Gen. Laws 2709, 2709, 2711 (amended) (codified at Tex. Penal Code. Ann. § 22.01(b)(2)(A)); *see also Comeaux v. State*, No. 14-11-00936-CR, 2013 WL 1499577, at *2 (Tex. App. Apr. 11, 2013). It is undisputed that this statute was in effect when Petitioner committed the charged offense in 2016, but Petitioner is correct that this statute was not in effect on the date of his prior murder conviction. It is well settled that a conviction which occurred prior to the enactment of a statute providing for increased punishment upon a subsequent conviction may be used for enhancement purposes under that statute, and that such usage does not violate the ex post facto prohibitions of the United States Constitution or the Texas Constitution. *See Gryger v. Burke*, 334 U.S. 728 (1948); *Graham v. West Virginia*, 224 U.S. 616 (1912); *Beland v. United States*, 128 F.2d 795 (5th Cir. 1942); *Ex parte White*, 211 S.W.3d 316, 320 (Tex. Crim. App. 2007); *Vasquez v. State*, 477 S.W.2d 629, 632 (Tex. Crim. App. 1972); *Comeaux*, No. 14-11-00936-CR, 2013 WL 1499577, at *2. Thus, the Texas Penal Code allowed the prior murder conviction to be used as a basis for making an assault a third-degree felony in 2016, when Petitioner committed the charged offense. *See* Tex. Penal Code. Ann. § 22.01(b)(2)(A). Accordingly, Petitioner's felony conviction did not violate the ex post facto prohibitions of the United States Constitution or the Texas Constitution. Petitioner fails to show that the state court's rejection of his ex post facto claim was contrary to, or involved an unreasonable application of, clearly established law as determined by the United States Supreme Court, and he is not entitled to federal habeas relief in relation to it.

D.    ***Brady* Violation (Claim Four)**

In Claim Four, Petitioner alleges that the State violated his due process rights by not timely disclosing records showing that Marida Buchanan, one of the arresting officers and a witness at Petitioner's trial, had been indicted for insurance fraud. (Dkt. #1, p. 7).

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). The prosecution "need not disgorge every piece of evidence in its possession . . . [but] has an affirmative duty to disclose to the defense evidence that is favorable to the accused and material to guilt." *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). In addressing a *Brady* claim, the Fifth Circuit has explained that a defendant must prove: (1) the prosecution suppressed evidence; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to the defense. *Derden v. McNeel*, 938 F.2d 605, 617 (5th Cir. 1991). The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* The materiality of the evidence is evaluated in light of the entire record. *See Alyasiri, v. Dir., TDCJ-CID*, No. 4:11CV780, 2015 WL 10575898, at *5 (E.D. Tex. Mar. 4, 2015); *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997). Additionally, the mere possibility that a piece of information might have helped the defense does not establish materiality in the constitutional sense. *Rector*, 120 F.3d at 562.

Petitioner's trial began on April 30, 2018, and the jury convicted him on May 18, 2018. (Dkt. #10-25, pp. 53-55, 75). Buchanan was indicted on or about November 8, 2018, while Petitioner's direct appeal was pending. (Dkt. #10-25, p. 77). On November 14, 2018, the State filed with the Second District Court of Appeal a Notice of Potential *Brady* Information regarding

23

Buchanan's indictment (Dkt. #10-25, pp. 79-81), and Petitioner's appellate counsel filed a reply brief addressing the issue (Dkt. #10-25, pp. 83-91).

When Petitioner raised the *Brady* claim in his state habeas application, the state court found that:

> 5.    The State timely disclosed the information about Marida Buchanan's indictment.
>
> 6.    The evidence adduced at trial was such that the evidence was legally sufficient to sustain the jury's verdict regardless of Buchanan's testimony.

(Dkt. #10-25, p. 106, ¶¶ 5, 6, p. 109). The state court concluded that "[n]o *Brady* violation occurred." (Dkt. #10-25, p. 106, ¶ 2, p. 109). The TCCA subsequently denied relief without a written order, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner fails to rebut the presumptive correctness of the state court findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. Indeed, the record establishes that Buchanan's indictment did not exist at the time of trial. "As such evidence did not exist at the time of trial, it was not *Brady* material." *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005); *see also Brogdon v. Blackburn*, 790 F.2d 1164, 1168 (5th Cir. 1986) ("The prosecution has no duty to turn over to the defense evidence that does not exist."); *Burgess v. Terry*, 478 F. App'x 597, 600 (11th Cir. 2012) (there can be no suppression of evidence that does not exist at the time of trial or sentencing). Furthermore, the record demonstrates that the State did not suppress Buchanan's indictment; to the contrary, the State promptly disclosed it, and the issue was presented to the state appellate court. Finally, as found by the state court, the evidence was legally sufficient to sustain the jury's verdict regardless of Buchanan's testimony. Thus, Petitioner fails to demonstrate a *Brady* violation with respect to Buchanan's indictment.

Accordingly, Petitioner fails to show that the state court's denial of his *Brady* claim was contrary to, or involved an unreasonable application of, clearly established law as determined by the United States Supreme Court. Thus, Petitioner is not entitled to federal habeas relief on Claim Four.

## V.  CONCLUSION

Petitioner fails to show that his claims have merit. Specifically, Petitioner fails to present a cognizable claim of actual innocence or demonstrate that the evidence was insufficient to support his conviction. Petitioner also fails to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that there is a reasonability probability that, but for trial counsel's alleged unprofessional errors, the result of the proceeding would have been different. Additionally, Petitioner fails to show that his trial was fundamentally unfair or that there was a *Brady* violation. Furthermore, Petitioner fails to rebut the presumption of correctness owed to the state court's factual findings with clear and convincing evidence to the contrary. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress*, 103 F.3d at 1224-25. In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28

U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S.

322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 19th day of April, 2023.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE